Day, J.
 

 Two questions are involved in these
 
 *131
 
 cases: First, does the phrase “expense of management,” as used in Section 9454, General Code, include cost of acquisition of business? Second, if it does, then is that part of the section in question in conflict with the Fourteenth Amendment to the federal Constitution, providing for the equal protection of the law?
 

 The contracts of insurance or policies issued byrelators are based upon the payment of the premium, assessment, or membership fee to the company, and the liability of the company is predicated thereon. These premiums, assessments, and membership fees are the property of the company. They are in no sense the property of the agent who collects them. The amount paid the agent for their collection is a matter of special contract between the company and the agent, and may vary in different parts of the state, as circumstances justify. The amount is what the company has to pay for its collections made, and, while the record in this case does not show other than a uniform rate, it is a part of managing the affairs of the company, and, being a subject of private contract between the company and its representative, it may be a large, small, or reasonable amount, as those in charge of the management of the company may contract.
 

 If salaries to officers are a part of expense of management, we see no reason why commissions paid agents are not equally so. The fact that the agent sometimes deducts from his collections a commission due him before remitting to the home office of the company makes the amount of premium, assessment, or membership fee collected by him none
 
 *132
 
 the less the property of the company, and that which the company had to pay to get this work done becomes a part of the expense of managing the affairs of the company.
 

 The record discloses testimony of witnesses familiar with the insurance business, and testimony is offered upon both sides of the question whether expense of management includes acquisition costs. It is also argued that, because the state for many years has failed to require the acquisition cost included in expense of management in the reports from the relators, this is tantamount to the recognition that such phrase in the statute does not include acquisition cost. However, the state is not estopped by the construction placed upon a given statute by its officials, although such custom may be considered in determining the meaning of the phrase and the intention of the Legislature.
 

 In the light of the conflicting testimony offered, we feel that the relators have not established a clear right to the relief prayed for upon the construction of the phrase “expense of management” as not including acquisition cost, and in an action in mandamus the evidence must so show.
 

 Being of opinion that “expense of management” includes acquisition cost, the next inquiry is whether the requirement that such expense of management be not more than 30 per cent, of the income of a foreign insurance corporation from premiums, assessments, and membership fees, while domestic companies doing precisely the same kind of business are not limited in expense of management, denies such foreign company equal protection of the law with a domestic company, thus violating the
 
 *133
 
 Fourteenth Amendment of the federal Constitution.
 

 We are cited by the relator to the case of
 
 Hanover Fire Ins. Co.
 
 v.
 
 Carr, Treas.,
 
 272 U. S., —, 47 S. Ct., 179, 71 L. Ed., —, decided by the Supreme Court of the United States on November 23, 1926. The plaintiff in error was a foreign corporation. The laws of Illinois prescribe conditions precedent to the right of a foreign insurance corporation to do business in the state. The plaintiff in error had complied with those. Section 30 of the Foreign Insurance Company Act of Illinois (Cahill’s Rev. St., 1925, c. 73, Section 159) provided for a 2 per cent, tax on the net receipts of such companies. The General Revenue Act of the state provided for the taxation of personal property at its fair cash value. Under the equalization system, the value upon which personal property assessment was made was reduced by 50 per cent. In practice, domestic corporations were permitted to list personal property at 60 per cent, of its actual market value, and reduce that by 50 per cent., so that the assessment was only 30 per cent, of the full value, whereas foreign corporations, such as the plaintiff in error, were required to list at full market value their net receipts as personal property, and pay taxes thereon. As stated in the opinion:
 

 ‘1
 
 The situation then is that a foreign fire, marine, and inland navigation insurance company like the petitioner must pay at a rate per centum equivalent to that imposed on personal property a tax on the cash amount or one hundred per cent, of its net receipts from all its insurance business. A domestic fire, marine, and inland navigation insurance company pays no tax on its net receipts from any
 
 *134
 
 kind of insurance. Both pay on their personal property other than net receipts as of a fixed date in each year on an assessment of thirty per cent, of its full value.”
 

 The Supreme Court of Illinois, by a divided court, held that the 2 per cent, tax on net receipts was an occupation tax, while the contention of the insurance company was that the same was a personal tax for purposes of securing general revenue for the state. In the syllabus in 272 U. S., —, 47 S. Ct., 179, 71 L. Ed., — , the following is found:
 

 “The Supreme Court of the United States must determine for itself whether or not a tax placed upon a foreign corporation as a part of the condition upon which admission to do business within the state is permitted is merely a regulating license by the state to protect the state and its citizens in dealing with such corporation, or whether it is a tax for the purpose of securing contributions to the revenue of the state as they are made by other taxpayers of the state.
 

 “A.state cannot relieve itself of the obligation of granting equal protection of the laws to foreign insurance companies which have met the conditions precedent to doing business therein, by providing that failure to pay a tax imposed upon them justifies a revocation of the license.
 

 “A foreign insurance company is unconstitutionally denied the equal protection of the laws by imposing upon it a tax upon the full amount of its net receipts at the rate to which other personal property is subject, where the tax is not imposed upon domestic corporations and personal property is assessed at only a small percentage of its value.”
 

 
 *135
 
 In the opinion in the above case, among the many cases cited is that of
 
 Southern Ry. Co.
 
 v.
 
 Greene,
 
 216 U. S., 400, the syllabus of which, as reported in 30 S. Ct., 287, 54 L. Ed., 536, reads (17 Ann. Cas., 1247):
 

 “A foreign railway corporation which has come into the state in compliance with its laws, and has therein acquired property of a fixed and permanent nature, upon Avhich it has paid all taxes levied by the state, is a person within the jurisdiction of the state, and, as . such, is protected by the equal protection of the laws clause of U. S. Const. 14th Amend., against the imposition, under 1 Ala. Code 1907, Sections 2391-2400, of an additional franchise tax for the privilege of doing business within the state, where no such tax is imposed upon domestic corporations carrying on a precisely similar business.”
 

 In the opinion in the
 
 Southern Railway case
 
 it is said at page 416 (30 S. Ct., 290): “We have here a foreign corporation within a state, in compliance with the laws of the state, which has lawfully acquired a large amount of permanent and valuable property therein, and which is taxed by a discriminating method, not employed as to domestic corporations of the same kind, carrying on a precisely similar business. * * * While reasonable classification is permitted, without doing violence to the equal protection of the laws, such classification must be based upon some real and substantial distinction, bearing a reasonable and just relation to the things in respect to which such classification is imposed; and classification cannot be arbitrarily made without any substantial
 
 *136
 
 basis. Arbitrary selection, it has been said, cannot be justified by calling it classification. * * * It would be a fanciful distinction to say that there is any real difference in the burden imposed because the one is taxed for the privilege of a foreign corporation to do business in the state, and the other for the right to be a corporation. The fact is that both corporations do the same business in character and kind, and under the statute in question a foreign corporation may be taxed many thousands of dollars for the privilege of doing, within the state, exactly the same business as the domestic corporation is permitted to do by a tax upon its privilege, amounting to only a few hundred dollars. We hold, therefore, that to tax the foreign corporation for carrying on business under the circumstances shown, by a different and much more onerous rule than is used in taxing domestic corporations for the same privilege, is a denial of the equal protection of the laws, and the plaintiff being in position to invoke the protection of the Fourteenth Amendment, that such attempted taxaation under a statute of the state does violence to the federal Constitution.”
 

 If relators are
 
 quasi
 
 citizens by reason of compliance with the conditions precedent set forth in Section 9453, General Code, is so much of Section 9454, General Code, as requires their expense of management to be 30 per cent, or less of their income from premiums, assessments, and membership fees, a valid and constitutional provision, when domestic companies, engaged in exactly similar business, are not required to meet any standard in the premises? Relators claim, and have introduced
 
 *137
 
 testimony to show, that, if expense of management includes acquisition cost, such foreign insurance companies cannot continue .in business in this state. The testimony on the part of the respondent, from witnesses identified with domestic companies engaged in similar lines of insurance, tends to show that such companies do not have an expense of management including acquisition cost, which is 30 per cent, or less of income from premiums, assessments, and membership fees, but that such expense of management, including acquisition cost, exceeds that amount. As between a citizen and a
 
 quasi
 
 citizen, made such by compliance with the conditions precedent established by the state for the privilege of doing business in the state, and having built up an extensive business, is not such a portion of the statute a denial of equal protection of the law? We think it is, and that it comes within the principles announced by Taft, C. J., in the
 
 Hanover case, supra:
 

 “The view of the court [Illinois] seems to be that the constitutional necessity for equal application of the laws of the state to foreign and domestic corporations properly engaged in business is avoided if only the state provides that failure to comply with the laws during the period or at the end of the period for which the license runs justifies a revocation of the license pending the period, or a. refusal to grant a new license for the following year. We do not think the state may thus relieve itself from granting the equal protection of its laws to a foreign company which has met the conditions precedent to its becoming a
 
 quasi
 
 domestic citizen. Of course at the end' of the year for which
 
 *138
 
 the license has been granted, the state may in its discretion impose as conditions precedent for a renewed license past compliance with its valid laws; but that does not enable the state to make past compliance with Section 30 a condition precedent to a renewal of the license, if as we find that section violates the Fourteenth Amendment, for, as already said, while a state may forbid a foreign corporation to do business within its jurisdiction, or to continue it,- it may not do so by imposing on a corporation a sacrifice of its constitutional rights. We have said in
 
 Cheney Bros. Co.
 
 v.
 
 Massachusetts,
 
 246 U. S., 147, 38 S. Ct., 295, 62 L. Ed., 632, and in
 
 Kansas City [M. & B.] etc., Railroad Co.
 
 v.
 
 Stiles,
 
 242 U. S., 111, 118, 37 S. Ct., 58, 61 L. Ed., 176, that a state does not surrender or abridge its power to change and revise its taxing system and tax rates by merely licensing or permitting a foreign corporation to engage in local business and acquire property within its limits, and that a state may impose a different rate of taxation upon a foreign corporation for the privilege of doing business within the state than it applies to its own corporations upon the franchise which the state grants them; but the decision in
 
 Southern Ry. Co.
 
 v.
 
 Greene,
 
 216 U. S., 400, 30 S. Ct., 287, 54 L. Ed., 536, 17 Ann. Cas., 1247, shows that this power to change the tax imposed on a foreign corporation as a condition for the license of continuing business is not unlimited, and that any attempt in a renewal to vary the terms of the original license which, however indirectly, enforces a new condition upon the corporation and involves a deprivation of its federal constitutional rights, can
 
 *139
 
 not be effective. Tbe state, in dealing with foreign corporations, may properly and without discrimination as between them and domestic companies regulate the former by a provision that for a failure by them to comply with any valid law governing the conduct of their business in the state the license already granted may be revoked. That is a legitimate condition in the treatment of foreign companies which do not have property and home within the state. It is a police regulation. But the power thus to revoke a license for breach of a law can only be validly exercised, if the law be a constitutional one. By compliance with the valid conditions precedent, the foreign insurance company is put on a level with all other insurance companies of the same kind, domestic or foreign within the state; and tax laws made to apply after it has been so received into the state, are to be considered laws enacted for the purpose of raising revenue for the state and must conform to the equal protection clause of the Fourteenth Amendment. This conclusion is not only in accord with our previous decisions but is sustained by the reasoning in a satisfactory judgment of the court of errors and appeals of New Jersey.
 
 Erie Railway Co.
 
 v.
 
 State,
 
 31 N. J., Law, 531, 542, 543, 544, 86 Am. Dec., 226.”
 

 If in the
 
 Hanover case
 
 an increase of tax of a foreign insurance company over a domestic company doing similar business is a denial of equal protection required by the Fourteenth Amendment, then a 30 per cent, limitation on the expense of management for a foreign insurance company as against no limitation on a domestic company is
 
 *140
 
 equally so. Therefore, so much of Section 9454, General Code, as requires the expense of management of a foreign insurance company that has complied with all conditions precedent, and built up an extensive insurance business in this state, to be not greater than 30 per cent, of its income from premiums, assessments, and membership fees, While no limitation is placed upon the expense of management of domestic companies doing precisely similar business in this state, is in contravention of the Fourteenth Amendment.
 

 It is claimed by respondent that this 30 per cent, rule is a part of the conditions- precedent to the renewal of a certificate for the privilege of doing business in this state, and that Sections 9453 and 9454, General Code, should be construed together, having been originally enacted as one section. An examination of the original act (95 Ohio Laws, 520; 97 Ohio Laws, 147) discloses that the same was incorporated in our Revised Statutes as Section 3630j. By the codification of 1910, Section 3630j became Sections 9453 and 9454, General Code, and the language became “but the superintendent shall refuse or revoke such certificate,” etc. While Section 9453, General Code, provides the conditions precedent, eight in number, Section 9454 starts with the language:
 

 ‘ ‘ Thereupon the superintendent of insurance shall issue to such corporation * * * a certificate of authority to transact its business in this state, which certificate shall be renewed annually,” etc.
 

 It is, of course, the claim of the relators that having been once admitted to the state such corporations as
 
 quasi
 
 citizens should stand upon
 
 *141
 
 an equality with other corporations engaged in the same business that are citizens of the state. Even though we take the view that the 30 per cent, rule is a part of the conditions precedent, to place a requirement upon a foreign insurance company with which it cannot comply and continue to do business in the state, while domestic corporations engaged in similar business are not required to comply with any rule or limitation of expense of management, comes within the rule of
 
 Southern Railway Co.
 
 v.
 
 Greene, supra,
 
 wherein it is said, at page 417 (30 S. Ct., 291):
 

 “While reasonable classification is permitted, without doing violence to the equal protection of the laws, such classification must be based upon some real and substantial distinction, bearing a reasonable and just relation to the things in respect to which such classification is imposed; and classification cannot be arbitrarily made without any substantial basis. Arbitrary selection, it has been said, cannot be justified by calling it classification.”'
 

 While we hold that so much of the section as above indicated is unconstitutional we are, however,, of opinion that the rest of said section, and sections with which it is
 
 in pari materia,
 
 are constitutional, and that full power is vested in the superintendent of insurance to refuse or revoke “a certificate of authority to transact its business in this state * * * when in his judgment such refusal or revocation will best promote the public interest.”
 

 The rule that a part of a statute may be found to be unconstitutional and the balance thereof be in conformity with constitutional provision is
 
 *142
 
 thoroughly established in this state. In
 
 Bowles
 
 v.
 
 State,
 
 37 Ohio St., 35, it is held:
 

 “A
 
 statute containing clauses in conflict with the Constitution, which, independently of such clauses, may have a constitutional operation according to the intent and purpose of the Legislature, is not wholly void by reason of such provisions.” Authorities are numerous to sustain the above proposition, and further citation is needless.
 

 It is claimed that the purpose of the amendment of 1904 (the 30 per cent, rule) was to keep out of the state companies organized and conducted for the purpose of making money for their officers and promoters and not for the benefit of the policy holders and members. We think this object may still be attained without that portion of the statute which we find to be unconstitutional. The provisions of the insurance laws of Ohio, appertaining to the power of the superintendent of insurance to act in the interest of the public with reference to both foreign and domestic insurance companies, are both broad and ample. By Sections 634-1 and 634-2, General Code, applicable to domestic corporations, “whenever any such corporation * * * is found, by the superintendent of insurance to be in such condition that its further transaction of business will be hazardous to its policy holders, or to its creditors, or to the public,” the superintendent is authorized to take steps requiring such corporation “to show cause why the superintendent should not take possession of its property and conduct its business, and for such other relief as the nature of the case and the interests of its policy holders, creditors, stockholders or the public may require. ’ ’
 

 
 *143
 
 By Section 635, General Code, applicable to foreign insurance companies, “if it appears * * * upon satisfactory evidence that the affairs of an insurance company, * * * not organized under the laws of this state, are in an unsound condition, he shall revoke the authority granted to such company to do business in this state,” etc.
 

 It would therefore seem that the Legislature has vested the superintendent of insurance, for the protection of the public, with complete jurisdiction over both domestic and foreign insurance companies, to the end that the best interests of the policy holder and the public transacting business with such companies may be at all times properly safeguarded, such power to be exercised subject to judicial review; that, under such power, certificates for admission and renewal thereof for the privilege of doing business in this state may be issued by the superintendent of insurance, based upon such a ratio of expense of management to income as is just and reasonable to both foreign and domestic companies, considering all the facts and circumstances relative to such companies.
 

 Entertaining the view that so much of Section 9454 as contained within the language, “also, when upon investigation it appears that the expense of management of such company or association, for the year preceding the year in which the investigation is made, was more than 30 per cent, of its income from premiums, assessments, and membership fees, ’ ’ is in conflict with the Fourteenth Amendment of the Constitution of the United States, and that the remainder of said section and cognate sections necessary to be considered incident to it
 
 *144
 
 are constitutional and valid, the conclusion is reached that the refusal of the superintendent of insurance to renew the certificates of the relators, based solely upon the above-quoted' language, is not well founded. The writs prayed for by the relators are therefore granted.
 

 Writs allowed.
 

 Marshall, C. J., Allen, Kinkade, Robinson, Jones and Matthias, JJ., concur.