[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 379.]

THE STATE EX REL. SHEMO ET AL. *v.* CITY OF MAYFIELD HEIGHTS ET AL.

[Cite as *State ex rel. Shemo v. Mayfield Hts.*, 2002-Ohio-4905.]

*Motion for reconsideration granted in part and judgment modified in part.*

(No. 2001-1325—Submitted June 4, 2002—Decided October 2, 2002.)

IN MANDAMUS.

ON MOTION FOR RECONSIDERATION.

_____

**Per Curiam.**

{¶1} On April 10, 2002, we granted a writ of mandamus to relators, co-owners as trustees of land located in the city of Mayfield Heights, Ohio, to compel respondents, the city and its mayor, city council, and planning commission, to commence appropriation proceedings to determine the amount of the city's temporary taking of relators' property. *State ex rel. Shemo v. Mayfield Hts.* (2002), 95 Ohio St.3d 59, 765 N.E.2d 345. We held that relators established a compensable taking of their property because the city's application of U-1(1) and U-2-A single-family residential zoning classifications to their property was unconstitutional in that the application of these classifications did not substantially advance legitimate state interests. Id. at 64, 765 N.E.2d 345. We further held that relators had established the period of the compensable taking as being from March 19, 1992, the date they claimed as the beginning date of the taking, i.e., when they first filed a declaratory judgment action challenging the application of U-1(1) zoning, until April 2001, when the U-2-A zoning classification was invalidated. Id. at 69, 765 N.E.2d 345.

{¶2} On April 22, 2002, respondents filed a motion for reconsideration.

{¶3} On April 23, 2002, the United States Supreme Court decided *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency* (2002), 535

U.S. ___, 122 S.Ct. 1465, 152 L.Ed.2d 517. In *Tahoe-Sierra*, the court held that moratoriums, totaling 32 months, on development in the Lake Tahoe Basin did not constitute a compensable taking although the moratoriums temporarily deprived affected landowners of all economically viable use of their property.

{¶4} On April 29, 2002, relators filed a brief in opposition to respondents' motion for reconsideration.

Motion for Reconsideration

{¶5} We have used our reconsideration authority under S.Ct.Prac.R. XI to " 'correct decisions which, upon reflection, are deemed to have been made in error.' " *Buckeye Community Hope Found. v. Cuyahoga Falls* (1998), 82 Ohio St.3d 539, 541, 697 N.E.2d 181, quoting *State ex rel. Huebner v. W. Jefferson Village Council* (1995), 75 Ohio St.3d 381, 383, 662 N.E.2d 339. For the following reasons, we grant respondents' motion in part and shorten the period in which a compensable taking was found, but otherwise deny the motion.

Compensation for Application of Invalid Zoning Ordinance

{¶6} Respondents raise three claims in support of reconsideration. In their first claim, they assert that *Shemo* sub silentio overruled established Ohio law, i.e., *Superior Uptown, Inc. v. Cleveland* (1974), 39 Ohio St.2d 36, 68 O.O.2d 21, 313 N.E.2d 820. In *Superior Uptown*, at the syllabus, we held, "A cause of action for money damages can not be maintained against a municipality for losses sustained as the result of the adoption of a rezoning ordinance which is subsequently declared invalid."

{¶7} Respondents' claim lacks merit. *Shemo* does not overrule *Superior Uptown*. *Superior Uptown* involved a direct action for money damages against a municipality and was based upon the doctrine of sovereign immunity. By contrast, this case involves a mandamus claim to compel public authorities to institute appropriation proceedings where an involuntary taking of private property was alleged and ultimately proven by relators.

2

Takings Analysis

**{¶8}** Respondents next contend that reconsideration is warranted because we did not apply in our takings determination the analysis set forth in *Penn Cent. Transp. Co. v. New York* (1978), 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631. In *Penn Cent.*, the United States Supreme Court held that, in general, the determination of whether a land-use regulation constitutes a compensable taking is an ad hoc, factual inquiry that depends upon several factors, including the economic effect on the landowner, the extent to which the regulation has interfered with reasonable investment-backed expectations, and the character of the government action. Id. at 124, 98 S.Ct. 2646, 57 L.Ed.2d 631; see, also, *Palazzolo v. Rhode Island* (2001), 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592. For the following reasons, respondents' contention does not warrant reconsideration.

**{¶9}** First, respondents' attempted reargument of this contention is not authorized by our Rules of Practice. "A motion for reconsideration shall be confined strictly to the grounds urged for reconsideration [and] shall not constitute a reargument of the case * * *." S.Ct.Prac.R. XI(2)(A). Respondents previously asserted the applicability of the *Penn Cent.* inquiry in their merit brief.

**{¶10}** Second, it is not evident that the *Penn Cent./Palazzolo* analysis applies to this case, in which the land-use regulations at issue were held to be unconstitutional as applied to the property, i.e., the U-1(1) and U-2-A zoning classifications did not substantially advance legitimate state interests. *Shemo*, 95 Ohio St.3d at 64, 765 N.E.2d 345. Neither *Penn Cent.* nor *Palazzolo* involved a claim that the applicable legislation did not substantially advance legitimate state interests. And in *Penn Cent.*, the United States Supreme Court emphasized that the landowners did not contest that New York City's objective in enacting the challenged landmark-preservation legislation was a permissible governmental goal or that the restrictions imposed on their land were appropriate means to secure that objective. Id., 438 U.S. at 129, 98 S.Ct. 2646, 57 L.Ed.2d 631.

**{¶11}** Third, even assuming that the *Penn Cent./Palazzolo* analysis applies, a finding of a compensable taking is still warranted. Restricting relators' land to residential use on property that was held to be unsuitable for residential use had an obvious adverse economic impact on relators, which necessarily interfered with their reasonable investment-backed expectations when they requested that the property be rezoned for retail development. Further, the city's application of residential classifications to their property did not substantially advance any legitimate health, safety, or welfare concern of Mayfield Heights. *Shemo*, 95 Ohio St.3d at 64, 765 N.E.2d 345; cf. *First English Evangelical Lutheran Church of Glendale v. Los Angeles* (1989), 210 Cal.App.3d 1353, 1372, 258 Cal.Rptr. 893, where a California appellate court, on remand from the United States Supreme Court, held that there was no compensable regulatory taking, while observing that "[t]he complaint does not allege * * * that it was unreasonable for the County to conclude these limitations would contribute substantially to the public safety." In addition, the duration of the challenged restrictions was much lengthier here than the challenged restrictions in *Tahoe-Sierra*, which totaled 32 months. Id. at ___, 122 S.Ct. 1465, 152 L.Ed.2d 517 ("the duration of the restriction is one of the important factors that a court must consider in the appraisal of a regulatory takings claims").

**{¶12}** Therefore, respondents' reliance on *Penn Cent.* and *Palazzolo* in support of reconsideration is misplaced.

*Tahoe-Sierra*

**{¶13}** Respondents' reconsideration motion could not rely on *Tahoe-Sierra* because that case was decided one day after their motion. The court therefore sua sponte considers whether *Tahoe-Sierra* requires a modification of our decision in *Shemo*. Upon consideration, *Tahoe-Sierra* does not warrant vacation of our April 10 judgment.

**{¶14}** As relators correctly note, unlike this case, *Tahoe-Sierra* did not involve the first prong of the regulatory takings test set forth in *Agins v. Tiburon* (1980), 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (application of land-use regulations to property constitutes a compensable taking "if the ordinance does not substantially advance legitimate state interests * * * or denies an owner economically viable use of his land"). In fact, in *Tahoe-Sierra*, the United States Supreme Court emphasized that the landowners challenging the temporary environmental moratoriums did not argue, as relators did in this case, that the moratoriums did not substantially advance a legitimate state interest. Id. at ___, 122 S.Ct. 1465, 152 L.Ed.2d 517 ("recovery on * * * a theory that the state interests were insubstantial is foreclosed by the District Court's unchallenged findings of fact").

**{¶15}** Moreover, to the extent that *Tahoe-Sierra* could be construed as an abandonment of most per se or categorical rules in regulatory takings cases, application of the *Penn Cent./Palazzolo* ad hoc, factual inquiry here does not, as previously discussed, require a different holding.

**{¶16}** Therefore, *Tahoe-Sierra* does not demand a vacation of our judgment here.

### Period of the Taking

**{¶17}** Respondents finally contend that we should reconsider the length of the period for the compensable taking.

**{¶18}** In this case, relators requested that the period of the taking begin on March 19, 1992, when they first challenged the application of the U-1(1) single-family residential zoning classification to their property. We granted their request. *Shemo*, 95 Ohio St.3d at 69, 765 N.E.2d 345.

**{¶19}** The date of a regulatory taking may begin on the date the challenged regulation was either enacted or applied to the subject property. See, generally, 8A Rohan & Reskin, Nichols on Eminent Domain (3d Ed.2001) 24-36, Section

24.04[3], fn. 34; *First English Evangelical Lutheran Church of Glendale v. Los Angeles* (1987), 482 U.S. 304, 319, 107 S.Ct. 2378, 96 L.Ed.2d 250.

{¶20} The date that the first of the challenged zoning classifications was adopted and applied to relators' property preceded the date that relators requested for the commencement of the taking, i.e., the date they first challenged the validity of the classification as applied to their property.

{¶21} But upon reflection, we deem this period to start in June 1995, when relators refiled their action for declaratory judgment, and shorten the period of the temporary taking. In this regard, although relators initially challenged the application of the U-1(1) classification to their property by a declaratory judgment action filed on March 19, 1992, they *voluntarily dismissed* this action in June 1995. Moreover, until they refiled their declaratory judgment action in that same month, they *never requested* that their property be rezoned to permit *retail* use, instead choosing to request that it be rezoned to permit multifamily *residential* development. Therefore, they were not harmed by the application of the challenged regulations to their property, which was ultimately found unsuitable for residential use, during the period from March 1992 to June 1995 when they did not seek to use their property for a nonresidential use. The appropriate starting date for the taking is consequently June 1995, when they specifically requested in their refiled declaratory judgment action that the property be rezoned to permit retail and warehouse development.

{¶22} Respondents assert that the period of the taking should be further shortened because any delay was due to the court's change in precedent, relators' delay in preparing to build an access drive, the relatively late resolution of the issue concerning the paper streets that the city claimed it owned, and the R.C. 2744.04 statute of limitations. Respondents' additional assertions lack merit for the following reasons.

**{¶23}** Neither *Gerijo, Inc. v. Fairfield* (1994), 70 Ohio St.3d 223, 638 N.E.2d 533, nor *Goldberg Cos., Inc. v. Richmond Hts. City Council* (1998), 81 Ohio St.3d 207, 690 N.E.2d 510, the two cases cited by respondents in their reconsideration motion, involved takings claims. Hence, respondents could not justifiably rely on them to support their unconstitutional application of residential zoning classifications to relators' property. *Shemo*, 95 Ohio St.3d at 63-64, 765 N.E.2d 345.

**{¶24}** In addition, respondents' arguments concerning relators' alleged delay in preparing to make access road improvements and the further delay concerning the resolution of the paper-streets issue were both raised in their initial brief; they cannot reargue them now. S.Ct.Prac.R. XI(2)(A). And as we held in *Shemo*, 95 Ohio St.3d at 68, 765 N.E.2d 345, "Any delays by relators did not contribute to respondents' delay in finally rezoning the property to U-4 [retail and wholesale use]." Further, "relators owned the property consisting of the 'paper streets' at the time the temporary taking occurred because the city had abandoned the property." Id.

**{¶25}** Finally, respondents waived their R.C. 2744.04 contention by failing to raise this affirmative defense in their pleadings. See *State ex rel. Tubbs Jones v. Suster* (1998), 84 Ohio St.3d 70, 75, 701 N.E.2d 1002 ("A statute of limitations is an affirmative defense that is waived unless pled in a timely manner").

Conclusion

**{¶26}** Based on the foregoing, we grant respondents' motion for reconsideration in part and shorten the period of the temporary taking from March 19, 1992 through April 2001 to June 1995 through April 2001. In all other respects, we deny respondents' motion for reconsideration.

Judgment accordingly.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

PFEIFER and COOK, JJ., concur in part and dissent in part.

————————————

**COOK, J., concurring in part and dissenting in part.**

{¶27} I would deny the motion for reconsideration in its entirety.

PFEIFER, J., concurs in the foregoing opinion.

————————————

Berns, Ockner & Greenberger, L.L.C., Sheldon Berns, Benjamin J. Ockner and Jordan Berns, for relators.

Leonard F. Carr and L. Bryan Carr; Mansour, Gavin, Gerlack & Manos Co., L.P.A., Anthony J. Coyne, Bruce G. Rinker and Eli Manos, for respondents.

————————————