[Cite as *State ex rel. Savage v. Caltrider*, 100 Ohio St.3d 363, 2003-Ohio-6806.]

THE STATE EX REL. SAVAGE, APPELLANT, *v*. CALTRIDER, REGISTRAR, APPELLEE.

[Cite as *State ex rel. Savage v. Caltrider,* 100 Ohio St.3d 363, 2003-Ohio-6806.]

*Motor vehicles — Administrative law — Mandamus — Writ sought to compel Ohio Bureau of Motor Vehicles Registrar to comply with R.C. Chapter 119 before adopting new procedure for submitting license reinstatement applications — Court of appeals' denial of writ affirmed.*

(No. 2003-1299 — Submitted December 2, 2003 — Decided December 31, 2003.)

APPEAL from the Court of Appeals for Franklin County, No. 02AP-453.

_____

**Per Curiam**.

{¶1}   Appellant, Leo Victor Savage, is a customer-service representative and assistant to the president of License Resque.  Savage serves as an agent for clients seeking to have their Ohio driver's licenses reinstated.  Savage submits license-reinstatement requests on behalf of clients at reinstatement centers operated by the Ohio Bureau of Motor Vehicles.  Reinstatement centers serve both individuals seeking reinstatement of their licenses and agents requesting the license reinstatement of one or more clients.

{¶2}   Before March 30, 2003, agents could present ten or more applications for reinstatement at a time.  Shirley Franklin, the supervisor of the public service area of the Alum Creek Reinstatement Center, and her bosses determined that the reinstatement center should implement a policy to regulate the amount of time that caseworkers were spending with any one person and thereby improve service to other customers.

**{¶3}** As a result of this determination, on March 30, 2000, Franklin notified agents, runners, and carriers that the reinstatement center was changing its procedure. Under the new policy, on Mondays and Fridays, agents could submit only one reinstatement application at a time. On Tuesdays, Wednesdays, and Thursdays, agents could submit up to four applications at a time. This new policy was not implemented in a racially discriminating manner.

**{¶4}** The reinstatement center also provided agents with the option of dropping off or mailing as many applications as they wanted, and the applications would then be processed within 48 to 72 hours of receipt.

**{¶5}** In April 2002, Savage filed a complaint in the Court of Appeals for Franklin County against appellee, Ohio Bureau of Motor Vehicles Registrar Franklin Caltrider. In his complaint, as subsequently amended, Savage requested a writ of mandamus to compel Caltrider to comply with R.C. Chapter 119 in order to adopt the March 30, 2000 reinstatement center policy as a formal rule.

**{¶6}** After the parties submitted certified evidence and briefs, in March 2003, a magistrate recommended that the court of appeals deny the writ. Savage filed objections, and in June 2003, the court of appeals overruled Savage's objections and denied the writ.

**{¶7}** In his appeal of right, Savage asserts that the court of appeals erred in denying the writ. Savage claims that the court of appeals relied on an affidavit that was not introduced into evidence and that the March 30, 2000 policy implemented by the reinstatement center authorized and enforced racial discrimination that was enforced against him.

**{¶8}** In order to be entitled to the requested extraordinary relief in mandamus, Savage had to establish a clear legal right to compliance with the R.C. Chapter 119 requirements for adopting a rule, a corresponding clear legal duty on the part of Caltrider to comply with these requirements before adopting the reinstatement center's March 30, 2000 policy, and the lack of an adequate remedy

in the ordinary course of the law. *State ex rel. Ferguson v. Court of Claims of Ohio, Victims of Crime Div.*, 98 Ohio St.3d 399, 2003-Ohio-1631, 786 N.E.2d 43, ¶ 10.

{¶9} As the court of appeals correctly concluded, Savage failed to establish either a clear legal right to the requested relief or a corresponding clear legal duty on the part of Caltrider to provide it. R.C. 119.01(C) provides that "internal management rules" that do not affect private rights are not rules that are subject to the formal rulemaking procedures of R.C. Chapter 119:

{¶10} " 'Rule' means any rule, regulation, or standard, having a general and uniform operation, adopted, promulgated, and enforced by any agency under the authority of laws governing such agency, and includes any appendix to a rule. *'Rule' does not include any internal management rule of an agency unless the internal management rule affects private rights* and does not include any guideline adopted pursuant to section 3301.0714 of the Revised Code." (Emphasis added.)

{¶11} An "internal management rule" is a "rule, regulation, or standard governing the day-to-day staff procedures and operations within an agency." R.C. 119.01(K).

{¶12} The evidence introduced in the court of appeals established that the March 30, 2000 reinstatement-center policy was an internal management rule that did not affect private rights for purposes of R.C. 119.01. The policy governed the day-to-day staff procedures within the center by restricting the number of applications that agents could present in person at one time. This improved service to customers filing their own applications in person. And agents had options available to submit as many applications as they wish by dropping them off or by mailing them.

{¶13} We denied a writ of mandamus under comparable circumstances in *State ex rel. Life of Maryland, Inc. v. Katz* (1983), 4 Ohio St.3d 140, 4 OBR 384,

447 N.E.2d 116. In *Katz*, a foreign life-insurance company sought a writ of mandamus to compel the Superintendent of the Department of Insurance to act on its application for a certificate of authority to transact life-insurance business in Ohio. The superintendent had a policy of considering only 15 applications at each of its quarterly meetings. The insurance company claimed that the policy was a "rule" that had not been promulgated in compliance with R.C. Chapter 119. We denied the writ because the policy constituted an internal management rule that did not affect private rights:

**{¶14}** "The record clearly demonstrates that respondent's department has limited resources and personnel. Respondent's policy of reviewing fifteen applications each meeting is a managerial response to those limitations and not an administrative rule." Id., 4 Ohio St.3d at 141, 4 OBR 384, 447 N.E.2d 116.

**{¶15}** Similarly, the reinstatement center's policy placing restrictions on agents filing multiple applications is merely a managerial response to customer-service problems encountered by some of the center's patrons. Moreover, Savage's claims lack merit. Franklin's affidavit, relied upon by the court of appeals, *was* submitted by Caltrider as part of his certified evidence in that court. And the evidence establishes that the policy was not racially discriminatory in either its creation or its enforcement.

**{¶16}** Therefore, we affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

————————

Leo Victor Savage, pro se.

Jim Petro, Attorney General, and Thomas J. Rocco, Assistant Attorney General, for appellee.

————————