The State ex rel. Lee *v.* Karnes, Sheriff.

[Cite as *State ex rel. Lee v. Karnes,*
103 Ohio St.3d 559, 2004-Ohio-5718.]

(No. 2004–0602—Submitted September 14, 2004—Decided November 17, 2004.)

_____

**Per Curiam.**

{¶ 1} On January 7, 2004, the General Assembly enacted a concealed-handguns law, Am.Sub.H.B. No. 12 ("H.B. 12"), which "authorize[s] county sheriffs to issue licenses to carry concealed handguns to certain persons." Title of H.B. 12. Governor Bob Taft approved the act on January 8, and the act became effective on April 8. Id. at L–61.

{¶ 2} On April 8, 2004, relator, Josephine Lee, appeared at the office of respondent, Franklin County Sheriff Jim Karnes, with her applications and supporting materials for a temporary emergency license to carry a concealed handgun ("TEL") and a concealed-handgun license ("CHL"). According to Emmett L. Wheeler, who processes applications to carry concealed handguns for the sheriff's office, he informed Lee that she could submit either application, or both, with the required fees for processing. Wheeler advised Lee that in his opinion, she would not have to submit the TEL application because the CHL application would be processed and received by her at the same time. After she consulted with another person who had accompanied her to the sheriff's office, Lee elected to submit only her TEL application.

{¶ 3} Lee then submitted her completed TEL application form, sworn affidavits pursuant to R.C. 2923.1213(B)(1)(a) and (b), and a temporary emergency license fee pursuant to R.C. 2923.1213(B)(1)(c). Lee also was prepared to submit a specimen of her fingerprints to the sheriff in accordance with R.C. 2923.1213(B)(1)(d).

{¶ 4} In one of Lee's affidavits submitted with her TEL application, she swore that "she has reasonable cause to fear a criminal attack upon herself or a member of h[e]r family, such as would justify a prudent person in going armed."

{¶ 5} The sheriff's office did not obtain fingerprints from Lee and did not conduct either a criminal-records check or an incompetency-records check on her. In addition, the sheriff's office never reviewed Lee's TEL application materials to determine whether the criteria in R.C. 2923.125(D)(1)(a) to (j) applied to Lee.

{¶ 6} Instead, by letter dated April 8, 2004, which was handed to Lee on April 9, Sheriff Karnes notified Lee that her TEL application had been denied because she failed to submit sufficient evidence of imminent danger as required by R.C. 2923.1213(B)(1)(a). In the letter, Sheriff Karnes informed Lee of the denial of her application, the claimed defect in her affidavit, and the availability of appeal to challenge the denial:

{¶ 7} "Your application for a temporary emergency permit * * * is denied since your application fails to provide sufficient facts leading to a reasonable conclusion. Merely reciting the statutory language, without any facts to support your conclusory allegations, is not a sufficient basis for me to issue a temporary emergency permit.

{¶ 8} "You have the right to provide me with an additional affidavit containing sufficient facts to support your application or you can appeal my decision, per section 119.12 of the Revised Code."

{¶ 9} On April 9, 2004, instead of attempting to appeal the sheriff's denial of her TEL application, Lee filed this action for a writ of mandamus to compel Sheriff Karnes to accept and process her CHL and TEL applications. After Sheriff Karnes answered Lee's complaint, we granted an alternative writ, and the parties filed evidence and briefs. *State ex rel. Lee v. Karnes,* 102 Ohio St.3d 1481, 2004–Ohio–3069, 810 N.E.2d 965.

{¶ 10} This cause is now before us for a consideration of the merits.

### Mandamus

{¶ 11} Lee requests a writ of mandamus to compel Sheriff Karnes to accept and process her CHL and TEL applications. In order to be entitled to the requested extraordinary relief in mandamus, Lee must establish a clear legal right to the acceptance and processing of her applications, a corresponding clear legal duty on the part of Sheriff Karnes to accept and process them, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Savage v. Caltrider,* 100 Ohio St.3d 363, 2003–Ohio–6806, 800 N.E.2d 358, ¶ 8. With this standard of proof providing our analytical framework, we now consider Lee's claims.

### CHL Application

{¶ 12} Under H.B. 12, a person can apply for a CHL by submitting a completed application form, a nonrefundable license fee, certain supporting

documents, and a set of fingerprints to the sheriff of the applicant's county of residence or to the sheriff of any county adjacent to the applicant's county of residence. R.C. 2923.125(B).

{¶ 13} Upon receipt of these materials, the sheriff must conduct a criminal-records check and an incompetency-records check. R.C. 2923.125(C). Within 45 days after receipt of the application and pertinent materials, the sheriff must generally issue a four-year CHL if the criteria specified in R.C. 2923.125(D)(1)(a) to (*l*) apply. If the sheriff denies the CHL application because the applicant does not satisfy the criteria in R.C. 2923.125(D)(1)(a) to (*l*), the applicant may appeal the sheriff's denial under R.C. 119.12. R.C. 2923.125(D)(2)(b). If the sheriff denies the CHL application as a result of a criminal-records check, the applicant may contest the result using a challenge and review procedure. R.C. 2923.125(D)(2)(b) and 2923.127.

{¶ 14} Lee is not entitled to a writ of mandamus to compel Sheriff Karnes to accept and process her CHL application. The sheriff's duties under H.B. 12 arise only after the applicant submits a completed application form and supporting materials to the sheriff's office. R.C. 2923.125. Sheriff Karnes introduced evidence that Lee never submitted her CHL application to his office for processing and that if she had done so, his office would have accepted it for processing. Although Lee introduced contrary evidence, the sheriff's evidence prevents her from establishing a clear legal right to the acceptance and processing of her CHL application or a corresponding clear legal duty on the part of the sheriff to do so. See *State ex rel. Preschool Development, Ltd. v. Springboro*, 99 Ohio St.3d 347, 2003–Ohio–3999, 792 N.E.2d 721, ¶ 12 (relator in mandamus action "has the burden of proving * * * entitlement to the writ"); *State ex rel. Woodmen Acc. Co. v. Conn* (1927), 116 Ohio St. 127, 132, 156 N.E. 114 ("In the light of the conflicting testimony offered [in a mandamus action filed in the supreme court], we feel that the relators have not established a clear right to the relief prayed for").

{¶ 15} Therefore, because Lee failed to establish any of the requirements for extraordinary relief in mandamus, we deny the writ of mandamus to compel Sheriff Karnes to accept and process her CHL application.

## TEL Application

{¶ 16} H.B. 12 further provides that a person can apply for a TEL to carry a concealed handgun by submitting to the sheriff of the applicant's county of residence (1) evidence of imminent danger to the person or a member of the person's family, (2) a sworn affidavit that attests to some of the criteria set forth

in R.C. 2923.125(D)(1),[1] (3) a temporary emergency license fee, and (4) a set of fingerprints taken by the sheriff's office. R.C. 2923.1213(B)(1)(a) to (d).

{¶ 17} Upon receipt of the foregoing documentation, the sheriff must immediately conduct a criminal-records check and an incompetency-records check and, after receiving these results, must determine whether the criteria of R.C. 2923.125(D)(1)(a) to (j) apply to the TEL applicant. R.C. 2923.1213(B)(2). The sheriff must either grant the 90–day TEL or deny it. The applicant may appeal the denial of the application. R.C. 2923.1213(B)(2).

{¶ 18} Sheriff Karnes determined that he need not process Lee's TEL application because he found that she did not present sufficient "[e]vidence of imminent danger to the person or a member of the person's family." R.C. 2923.1213(B)(1)(a). R.C. 2923.1213(A)(1) defines this evidence as either a sworn statement by the applicant or a written document prepared by a governmental entity or public official:

{¶ 19} "(1) 'Evidence of imminent danger' means any of the following:

{¶ 20} "(a) A statement sworn by the person seeking to carry a concealed handgun that is made under threat of perjury and that *states that the person has reasonable cause to fear* a criminal attack upon the person or a member of the person's family, such as would justify a prudent person in going armed;

{¶ 21} "(b) A written document prepared by a governmental entity or public official *describing the facts that give the person seeking to carry a concealed handgun reasonable cause to fear* a criminal attack upon the person or a member of the person's family, such as would justify a prudent person in going armed. Written documents of this nature include, but are not limited to, any temporary protection order, civil protection order, protection order issued by another state,

---

1. R.C. 2923.1213(B)(1)(b) requires that this affidavit contain "all of the information required to be on the license and attesting that the person is at least twenty-one years of age; is not a fugitive from justice; is not under indictment for or otherwise charged with an offense identified in division (D)(1)(d) of section 2923.125 of the Revised Code; has not been convicted of or pleaded guilty to an offense, and has not been adjudicated a delinquent child for committing an act, identified in division (D)(1)(e) of that section; within three years of the date of the submission, has not been convicted of or pleaded guilty to an offense, and has not been adjudicated a delinquent child for committing an act, identified in division (D)(1)(f) of that section; within five years of the date of the submission, has not been convicted of, pleaded guilty, or adjudicated a delinquent child for committing two or more violations identified in division (D)(1)(g) of that section; within ten years of the date of the submission, has not been convicted of, pleaded guilty, or adjudicated a delinquent child for committing a violation identified in division (D)(1)(h) of that section; has not been adjudicated as a mental defective, has not been committed to any mental institution, is not under adjudication of mental incompetence, has not been found by a court to be a mentally ill person subject to hospitalization by court order, and is not an involuntary patient other than one who is a patient only for purposes of observation, as described in division (D)(1)(i) of that section; and is not currently subject to a civil protection order, a temporary protection order, or a protection order issued by a court of another state, as described in division (D)(1)(j) of that section."

or other court order, any court report, and any report filed with or made by a law enforcement agency or prosecutor." (Emphasis added.)

{¶ 22} Lee chose to submit evidence in accordance with the first alternative—a sworn statement made under threat of perjury—as evidence of imminent danger supporting her TEL application. R.C. 2923.125(A)(1)(a). Sheriff Karnes concluded that her statement was insufficient because she did not include *specific facts* supporting her statement that she had "reasonable cause to fear a criminal attack upon herself or a member of h[e]r family, such as would justify a prudent person in going armed."

{¶ 23} Resolution of Lee's challenge to the sheriff's conclusion requires our interpretation of R.C. 2923.1213(A)(1)(a). The court's paramount concern in construing a statute is legislative intent. *State ex rel. United States Steel Corp. v. Zaleski*, 98 Ohio St.3d 395, 2003–Ohio–1630, 786 N.E.2d 39, ¶ 12. In discerning this intent, we read words and phrases in context according to the rules of grammar and common usage. R.C. 1.42; *Bosher v. Euclid Income Tax Bd. of Review*, 99 Ohio St.3d 330, 2003–Ohio–3886, 792 N.E.2d 181. If the statute is unambiguous, we must apply it as written. *State v. Hairston*, 101 Ohio St.3d 308, 2004–Ohio–969, 804 N.E.2d 471, ¶ 13.

{¶ 24} R.C. 2923.1213(A)(1)(a) requires only an applicant's sworn statement made under threat of perjury that "the person has reasonable cause to fear a criminal attack upon the person or a member of the person's family, such as would justify a prudent person in going armed." It does not require underlying facts to support the sworn statement.

{¶ 25} Adopting the sheriff's construction of the R.C. 2923.1213(A)(1)(a) statutory requirement would substitute "describing the facts that give the person" for "states that the person has" before "reasonable cause to fear a criminal attack upon the person or a member of the person's family, such as would justify a prudent person in going armed." This additional language would make the R.C. 2923.1213(A)(1)(a) definition of "[e]vidence of imminent danger" read, "A statement sworn by the person seeking to carry a concealed handgun that is made under threat of perjury *describing the facts that give the person* reasonable cause to fear a criminal attack upon the person or a member of the person's family, such as would justify a prudent person in going armed." We cannot, however, add this language to the statute. See *State v. Hughes* (1999), 86 Ohio St.3d 424, 427, 715 N.E.2d 540 ("In construing a statute, we may not add or delete words").

{¶ 26} Had the General Assembly intended the factual requirement espoused by the sheriff, it would have included it in R.C. 2923.1213(A)(1)(a). In fact, the General Assembly did just that in the alternate method for TEL applicants to establish evidence of imminent danger. R.C. 2923.1213(a)(1)(b) ("A written document prepared by a governmental entity or public official *describing the facts*

that give the person seeking to carry a concealed handgun reasonable cause to fear a criminal attack upon the person or a member of the person's family, such as would justify a prudent person in going armed." [Emphasis added.] ).

{¶ 27} "The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *BedRoc Ltd., LLC v. United States* (2004), 541 U.S. 176, 124 S.Ct. 1587, 1593, 158 L.Ed.2d 338, quoting *Connecticut Natl. Bank v. Germain* (1992), 503 U.S. 249, 253–254, 112 S.Ct. 1146, 117 L.Ed.2d 391. Because the General Assembly did not include a requirement of descriptive facts to support a TEL applicant's sworn statement providing evidence of imminent danger in R.C. 2923.1213(A)(1)(a), we will not infer one.

{¶ 28} Consequently, Sheriff Karnes erred in rejecting Lee's TEL application and failing to process it further. Lee presented sufficient evidence of imminent danger.

{¶ 29} Under these circumstances, the sheriff had a duty to conduct the criminal-records and incompetency-records checks and, upon receipt of those results, to review the information and determine whether the criteria of R.C. 2923.125(D)(1)(a) to (j) apply to Lee. R.C. 2923.1213(B)(2).

{¶ 30} Nevertheless, Lee had an adequate remedy by appeal from Sheriff Karnes's decision denying her TEL application. R.C. 2923.1213(B)(2) specifies that a TEL applicant may appeal the denial of a TEL:

{¶ 31} "If the sheriff denies the issuance of a temporary emergency license to the person, the sheriff shall specify the grounds for the denial in a written notice to the person. *The person may appeal the denial,* or challenge criminal records check results that were the basis of the denial if applicable, *in the same manners specified in division (D)(2) of section 2923.125* and in section 2923.127 of the Revised Code, *regarding the denial of an application for a license to carry a concealed handgun under that section.*" (Emphasis added.)

{¶ 32} R.C. 2923.125(D)(2)(b) provides that an applicant who has been denied a CHL can appeal the denial under R.C. 119.12:

{¶ 33} "If a sheriff denies an application under this section because the applicant does not satisfy the criteria described in division (D)(1) of this section, the sheriff shall specify the grounds for the denial in a written notice to the applicant. *The applicant may appeal the denial pursuant to section 119.12 of the Revised Code.*" (Emphasis added.)

{¶ 34} Lee contends that this appeal is not available to her because of the first sentence of R.C. 2923.125(D)(2)(b), which limits the appeal of the denial of CHL applications to those denials based on the applicants' failure to satisfy the criteria described in R.C. 2923.125(D)(1).

{¶ 35} Lee misreads R.C. 2923.1213(B)(2). The right of TEL applicants who have been denied licenses to appeal is not restricted to a sheriff's finding concerning R.C. 2923.125(D)(1) criteria. R.C. 2923.1213(B)(2) specifies that TEL applicants who have been denied licenses may appeal the denial in "the same manners specified in" R.C. 2923.125(D)(2). Construing this language according to the rules of grammar and common usage as required by R.C. 1.42, "manner" means "mode or method in which something is done." Webster's Third New International Dictionary (1986) 1376. Therefore, the reference in R.C. 2923.1213(B)(2) to 2923.125(D)(2) is only to the procedural mode or method in which an appeal is effectuated, i.e., pursuant to R.C. 119.12, and not to the substantive types of denials that may be appealed.

{¶ 36} In fact, unlike a denial of a CHL under the first sentence in R.C. 2923.125(D)(2)(b), the denial of a TEL application by a sheriff is not restricted to the applicant's satisfaction of criteria described in R.C. 2923.125(D)(1). Cf. R.C. 2923.1213(B)(2) ("If the sheriff denies the issuance of a temporary emergency license to the person, the sheriff shall specify the grounds for the denial in a written notice to the person") with R.C. 2923.125(D)(2)(b) ("If the sheriff denies an application under this section *because the applicant does not satisfy the criteria described in division (D)(1) of this section,* the sheriff shall specify the grounds for the denial in a written notice to the applicant"). (Emphasis added.)

{¶ 37} Adopting Lee's construction of the first sentence of the second paragraph of R.C. 2923.1213(B)(2) would add to that provision the language in the first sentence of R.C. 2923.125(D)(2)(b). Lee's argument results " 'not [in] a construction of [the] statute, but, in effect, an enlargement of it by the court, so that what was omitted * * * may be included within its scope.'" *Lamie v. United States Trustee* (2004), 540 U.S. 526, 124 S.Ct. 1023, 1032, 157 L.Ed.2d 1024, quoting *Iselin v. United States* (1926), 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566.

{¶ 38} Therefore, although Sheriff Karnes erred in denying Lee's TEL application for lack of sufficient evidence of imminent danger, Lee is not entitled to the requested writ of mandamus, because she had an adequate remedy by appealing the sheriff's denial. R.C. 2923.1213(B)(2) and 119.12.

## Conclusion

{¶ 39} Based on the foregoing, Lee has not established her entitlement to the requested extraordinary relief in mandamus regarding either her concealed-handgun license or temporary emergency license applications. Accordingly, we deny the writ.

Writ denied.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

Firestone & Brehm, Ltd., L. Kenneth Hanson III and Joanna R. Davis, for relator.

Ron O'Brien, Franklin County Prosecuting Attorney, and Nick A. Soulas Jr., Assistant Prosecuting Attorney, for respondent.