[THE STATE EX REL.] TRAFALGAR CORPORATION ET AL., APPELLANTS,
*v.* MIAMI COUNTY BOARD OF COMMISSIONERS, APPELLEE, ET AL.

[Cite as *State ex rel. Trafalgar Corp. v. Miami Cty. Bd. of Commrs.*, 104 Ohio St.3d 350, 2004-Ohio-6406.]

(No. 2004–0336—Submitted September 14, 2004—Decided December 8, 2004.)

---

**Per Curiam.**

{¶ 1} Pamela S. Geisinger and appellants Bruce Geisinger and Mark Geisinger own appellant Trafalgar Corporation, an Ohio corporation that has its principal place of business in Miami County, Ohio. For over 35 years, the Geisinger family or Trafalgar has owned an approximately 50–acre tract of land located in an unincorporated area of Concord Township, Miami County. In 1994, Bruce and Patricia M. Geisinger transferred the property to Trafalgar.

{¶ 2} In 1957, appellee, Miami County Board of Commissioners, adopted a Zoning Resolution for Miami County establishing zoning requirements for land located in the unincorporated area of the county. The board amended the zoning resolution in 1965. The resolution required the approval of the Miami County Planning Commission for residential building lots with frontage of less than 125 feet on any public highway or street. Conversely, the resolution permitted residential lots with road frontage of 125 feet or more.

{¶ 3} In 1969, Bruce Geisinger sought approval of a preliminary plan to develop the property by dividing it into 53 residential building lots. The Miami County Planning Commission approved the plan subject to one road being moved and the approval of the City of Troy Planning Commission. According to Trafalgar, a final permit for development was not received until 1995 because of water and sewer problems near the property.

{¶ 4} In 1995, 1997, and 1999, the Miami County Board of Commissioners approved Trafalgar's requests to rezone the property from A–2 General Agricultural to R–1AA Single Family Residential. But each time, Concord Township

voters rejected the zoning change by way of referendum. In its 1997 resolution approving Trafalgar's request for the zoning change, the board noted that "previous findings acknowledge that the area can be served with water and sewer services; the proposed zoning of R–1AA is consistent with surrounding zoning patterns; the use of the property for single family residential is compatible with surrounding land us[e] patterns; and, neither the transportation network nor other supportive services will be over burdened by this zoning change and possible development."

{¶ 5} In June 1999, Trafalgar filed a complaint in the Miami County Court of Common Pleas for a judgment declaring R.C. 303.12 unconstitutional and rezoning the property to R–1AA, as requested by Trafalgar in 1995, 1997, and 1999. R.C. 303.12(H) permits qualified voters residing in the unincorporated area of the township to petition for a referendum on a zoning amendment approved by a board of county commissioners.

{¶ 6} In September 2001, after the trial court denied Trafalgar's claims, the court of appeals affirmed. *Trafalgar Corp. v. Miami Cty. Bd. of Commrs.* (Sept. 7, 2001), Miami App. No. 2001 CA 6, 2001 WL 1018620. The court of appeals held that the trial court had not erred in determining that (1) the planning commission's 1969 approval of Bruce Geisinger's plan to develop 53 residential building lots on the property was conditional and not a final approval, (2) the electors' use of referendum to deny the requested zoning changes did not violate Trafalgar's right to substantive due process, (3) Trafalgar's takings claim was not cognizable in declaratory judgment, (4) the right of referendum is not an unconstitutional delegation of legislative power to township electors, and (5) the 1995, 1997, and 1999 board approvals of Trafalgar's requests for a zoning change constituted legislative actions, which were subject to referendum. We did not accept Trafalgar's appeal from the court of appeals judgment for review. *Trafalgar Corp. v. Miami Cty. Bd. of Commrs.* (2001), 94 Ohio St.3d 1411, 759 N.E.2d 787.

{¶ 7} In 2000, 2001, 2002, and 2003, the board again approved Trafalgar's zoning change requests. Concord Township electors rejected each zoning amendment in separate referenda.

{¶ 8} On May 10, 2002, appellants, Trafalgar and Bruce and Mark Geisinger, filed a complaint in the Court of Appeals for Miami County for a writ of mandamus to compel the Miami County Board of Commissioners and Concord Township to approve a zoning change for the property from A–2 General Agricultural to R–1AA Single Family Residential. Trafalgar and the Geisingers also sought a writ of mandamus to compel the board and Concord Township to commence appropriation proceedings to determine the amount by which the value

of appellants' property had been diminished by the repeated rejection of the zoning amendments by referenda.

{¶ 9} After the court of appeals dismissed Concord Township from the case, the remaining parties moved for summary judgment. Trafalgar and the Geisingers attached the affidavits of Bruce and Mark Geisinger to their motion. In Bruce Geisinger's affidavit, he made several conclusory statements, including that the previously approved residential land use was "entirely consistent with" the county's comprehensive development plan and approved land uses in the immediate vicinity of the proposed development.

{¶ 10} Mark Geisinger made comparable conclusory statements in his affidavit, e.g., "deprivation of use for residential purposes of the subject property constitutes a substantial and unreasonable interference with the right to use and develop the subject property," "refusal to allow the subject land use is in no way related to a substantial public purpose, is unduly harsh on the landowner and denies the landowner all economically viable use of the land," and "the use of the referendum power to preempt land use approval for residential purposes has been undertaken by petitioners and electors in unincorporated Concord Township for the express and specific malicious purpose of stifling the subject development for residential purposes, in a fashion which is not rationally related to any plan of development or use in the vicinity."

{¶ 11} Mark Geisinger further stated in his affidavit that "the only use of the subject property available to the landowner is farming, which produces a per acre payment by the tenant farmer to the landowner which totals a sum equaling no more than the cost of real estate taxes on the subject property."

{¶ 12} The board attached three affidavits to its motion. Kenneth A. LeBlanc, Director of Regional and Community Planning for the Miami Valley Regional Planning Commission, oversaw the creation of the comprehensive development plan for Miami County. Based on the plan, the commission found that the area including Trafalgar's property was rated as prime farm land, which is the most highly rated type of farm land in Ohio.

{¶ 13} LeBlanc noted that Trafalgar's property is surrounded by both agricultural and residential uses and was thus equally suitable for both uses. Residential development would increase traffic and pollution and impose additional burdens on utilities and government services. Based on these specific facts, LeBlanc concluded that the retention of the current A–2 General Agricultural zoning classification on Trafalgar's property was consistent with Miami County's comprehensive plan and was reasonable and legitimately related to "the interests of preservation of rural areas in the county and the limitation of over-development of rural areas in Miami County."

{¶ 14} In two other affidavits attached to the board's summary judgment motion, Miami County residents residing on farms neighboring Trafalgar's property stated that they had been involved in the referendum efforts to defeat appellants' attempts to rezone the property. Their specified reasons for opposing rezoning were (1) "[p]reservation of farmland from the encroachment of residential and urban growth from the City of Troy," (2) [c]oncerns regarding "increased traffic, noise, and pollution necessarily accompanying increased residential development," (3) "[c]oncerns about increased burden on the local water supply (ground water), including concerns about overall water consumption and water pollution," (4) "[c]oncerns about the increased burden on local governmental services, including emergency services and schools," and (5) "[p]reservation of the rural aesthetic * * * that is inconsistent with increased residential housing." They also stated that appellants were growing corn on the property and that appellants could divide their property into separate 10–acre lots for resale without any zoning change.

{¶ 15} On January 16, 2004, the court of appeals denied appellants' motion for summary judgment, granted the board's motion for summary judgment, and denied the writ of mandamus. The court of appeals determined that res judicata barred appellants' claim for a writ of mandamus to compel the board to approve the requested zoning change.

{¶ 16} The court of appeals further held that appellants' claim for a writ of mandamus to compel the board to institute an appropriation action lacked merit. Appellants had "failed to produce competent evidence to establish that the current zoning has deprived [them] of all economically viable uses of the land."

{¶ 17} On March 11, 2004, we referred this case to mediation. *Trafalgar Corp. v. Miami Cty. Bd. of Commrs.*, 101 Ohio St.3d 1476, 2004-Ohio-1093, 804 N.E.2d 974. On August 3, 2004, this case was returned to the regular docket. *Trafalgar Corp. v. Miami Cty. Bd. of Commrs.*, 103 Ohio St.3d 1402, 2004-Ohio-4028, 812 N.E.2d 1286.

{¶ 18} This cause is now before us for a consideration of the merits.

## Standard of Review

{¶ 19} Appellants assert that the court of appeals erred in granting the board's summary judgment motion and denying their claims for writs of mandamus. Under Civ.R. 56(C), summary judgment is warranted if (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267; *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343.

{¶ 20} In order to be entitled to the requested writ of mandamus, appellants had to establish a clear legal right to compel the board to approve the requested zoning change and commence an appropriation action, a corresponding clear legal duty on the board to perform these acts, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Savage v. Caltrider*, 100 Ohio St.3d 363, 2003-Ohio-6806, 800 N.E.2d 358, ¶ 8.

### Mandamus: Res Judicata

{¶ 21} Appellants initially requested a writ of mandamus to compel the board to approve a zoning change for the property from A–2 General Agricultural to R–1AA Single Family Residential. Appellants claimed that they were entitled to the relief because the referenda violated their substantive due process rights.

{¶ 22} Insofar as appellants' mandamus claim challenged the referenda at issue in Trafalgar's prior declaratory judgment action, res judicata barred appellants' claim. "Under the doctrine of res judicata, '[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.'" *State ex rel. Denton v. Bedinghaus*, 98 Ohio St.3d 298, 2003-Ohio-861, 784 N.E.2d 99, ¶ 14, quoting *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, syllabus. For a previous declaratory judgment, res judicata precludes only claims that were *actually decided*. *State ex rel. Shemo v. Mayfield Hts.* (2002), 95 Ohio St.3d 59, 69, 765 N.E.2d 345, judgment modified in part on other grounds, 96 Ohio St.3d 379, 2002-Ohio-4905, 775 N.E.2d 493.

{¶ 23} Trafalgar's claim that the referenda denying its 1995, 1997, and 1999 requests for the zoning change violated its constitutional right of substantive due process was decided adversely to Trafalgar in the declaratory judgment case. Moreover, we agree with the court of appeals that the referenda in 2000, 2001, 2002, and 2003 denying Trafalgar's subsequent requests for the zoning change did not raise any different issues from those decided in the declaratory judgment case. Hence, res judicata precluded appellants, Trafalgar and two of its owners, from relitigating this claim in their mandamus action.

### Mandamus: Appropriation

{¶ 24} Appellants also requested a writ of mandamus to compel the board to commence appropriation proceedings. The United States and Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation. Fifth and Fourteenth Amendments to the United States Constitution; Section 19, Article I, Ohio Constitution. "'Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged.'" *State ex rel. Preschool Dev., Ltd. v. Springboro*, 99 Ohio St.3d 347, 2003-Ohio-3999, 792 N.E.2d 721, ¶ 12, quoting *Shemo*, 95 Ohio St.3d at 63, 765 N.E.2d 345.

{¶ 25} In *Shemo*, 95 Ohio St.3d at 63, 765 N.E.2d 345, we noted that a compensable regulatory taking could "occur *either* if the application of the zoning ordinance to the particular property is constitutionally invalid, i.e., it does not substantially advance legitimate state interests, *or* denies the landowner all economically viable use of the land." (Emphasis sic.) As previously discussed, appellants are barred by res judicata from challenging the constitutionality of the referenda in their mandamus action. Appellants claim that the referendum results denied them all economically viable use of the land.

{¶ 26} Appellants failed to present sufficient evidence, however, to raise a genuine issue of material fact. At best, they presented evidence that showed that their current use of the property—farming—is not profitable. But the board presented evidence that the current A–2 General Agricultural zoning classification permitted other nonagricultural uses, including the division of the property into separate 10–acre lots for resale. In fact, appellants' *own evidence* established that their 1969 preliminary development plan included residential building lots "with not less than 125 feet of frontage." Under the county's zoning resolution and the A–2 General Agricultural classification, as long as these lots had not less than 125 feet of frontage, no zoning change was required. Therefore, appellants could conceivably seek the residential development they requested in 1969.

{¶ 27} "When a motion for summary judgment is made and supported as provided in Civ.R. 56, the nonmoving party may not rest on the mere allegations of [its] pleading, but [its] response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing the existence of a genuine triable issue." *State ex rel. Burnes v. Athens Cty. Clerk of Courts* (1998), 83 Ohio St.3d 523, 524, 700 N.E.2d 1260. Appellants did not meet that burden here.

{¶ 28} Finally, although appellants do not assert that we need to apply the takings analysis set forth in *Penn Cent. Transp. Co. v. New York* (1978), 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631, see *Shemo*, 96 Ohio St.3d 379, 2002-Ohio-4905, 775 N.E.2d 493, at ¶ 8–11, their summary judgment evidence is also insufficient to raise a genuine triable issue under the *Penn Cent.* test.

{¶ 29} Therefore, the court of appeals properly granted the board's motion for summary judgment and denied the writ of mandamus to compel the commencement of appropriation proceedings.

## Conclusion

{¶ 30} The court of appeals did not err in granting summary judgment to the board and denying appellants' mandamus claims. Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

PFEIFER, J., dissents.

### PFEIFER, J., dissenting.

{¶ 31} All the Geisingers want is to develop their 50-acre tract of land. In 1969 the Miami County Planning Commission conditionally approved their plan to develop 53 residential lots. Since then, the Miami County Board of Commissioners has approved a modified land-use development plan several times. Each time, the residents of Concord Township filed referendum petitions and voted to reverse the approval of the board.

{¶ 32} The issue in this case is whether these repeated referenda constitute a taking. " 'The application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests * * * or denies an owner economically viable use of his land * * *.' " *Goldberg Cos., Inc. v. Richmond Hts. City Council* (1998), 81 Ohio St.3d 207, 211, 690 N.E.2d 510, quoting *Agins v. Tiburon* (1980), 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106.

{¶ 33} Today, the majority relies on res judicata to reject the Geisingers' claims, determining that their claims are precluded because they have already been decided based on the *Agins* test. I might agree with the majority if the claims had been litigated after our decision in *State ex rel. Shemo v. Mayfield Hts.* (2002), 95 Ohio St.3d 59, 765 N.E.2d 345. In *Shemo*, however, we stated that the *Agins* test is "disjunctive," even though "in previous cases we have applied the test in a conjunctive fashion." Id. at 63, 765 N.E.2d 345. The Geisingers' claims were decided before we determined that a disjunctive test is the proper test to determine whether a compensable taking has occurred. Accordingly, I reject the res judicata rationale underpinning the majority's decision.

{¶ 34} I would reach the merits and apply the *Agins* test to the facts before us. In affidavits, the Miami County residents provided five reasons for opposing the rezoning, including concerns regarding "increased traffic, noise, and pollution necessarily accompanying increased residential development," the "increased burden on the local water supply," and "the increased burden on local governmental services, including emergency services and schools." These concerns are legitimate state interests; they are not, however, unrebutted. The majority opinion states that "[i]n its 1997 resolution approving Trafalgar's request for the zoning change, the board noted that 'previous findings acknowledge that the area can be served with water and sewer services; the proposed zoning of R–1AA is consistent with surrounding zoning patterns; the use of the property for single

family residential is compatible with surrounding land us[e] patterns; and, neither the transportation network nor other supportive services will be over burdened by this zoning change and possible development.' " I conclude that this statement, at the very least, is enough to enable the Geisingers to survive summary judgment.

{¶ 35} The residents put forth two additional reasons for opposing the rezoning, the "[p]reservation of farmland from the encroachment of residential and urban growth from the City of Troy" and the "[p]reservation of the rural aesthetic * * * that is inconsistent with increased residential housing." I suspect that these concerns are the true motivation behind the opposing residents. The residents benefit from the bucolic setting provided unwillingly by the Geisingers, and they have no intention of giving it up. This is classic tyranny of the majority, and this court ought not to countenance it.

{¶ 36} This case is so tangled up in process—six times the board has approved the rezoning, six times a referendum has rejected the approval, and several cases and writs have been litigated—that at this time no court is willing to look at the merits. I consider the issue too important to be decided by summary process. I would request full argument from the parties and decide the merits. To do otherwise is to invite more constructive takings.

{¶ 37} Based on the limited information before us, I conclude that the opponents of the rezoning did not substantially advance legitimate state interests, thereby failing the first prong of the disjunctive *Agins* test. Id., 447 U.S. at 260, 100 S.Ct. 2138, 65 L.Ed.2d 106. Further, Mark Geisinger stated in an affidavit that the current use of the property is barely sufficient to cover the cost of the real-estate taxes. That statement, viewed in a light most favorable to the Geisingers, is enough for them to survive summary judgment with respect to the second prong of the *Agins* test, i.e., that the Geisingers have been denied an economically viable use of their land. Id. I dissent.

---

Leppla Associates and Gary J. Leppla, for appellants.

Isaac, Brant, Ledman & Teetor, L.L.P., Steven G. LaForge and Aaron M. Glasgow, for appellee.