THE STATE EX REL. PRESCHOOL DEVELOPMENT, LTD. *v.* CITY OF SPRINGBORO.

[Cite as *State ex rel. Preschool Dev., Ltd. v. Springboro,*
99 Ohio St.3d 347, 2003-Ohio-3999.]

(No. 2002–1785—Submitted April 15, 2003—Decided August 13, 2003.)

———————

MOYER, C.J.

{¶ 1} State Route 73 is a five-lane highway that runs through the city of Springboro, Ohio, respondent, for approximately 3.3 miles. S.R. 73, which is also known as East Central Avenue and West Central Avenue, is the primary east-west highway in the region. Most commercial activity in Springboro occurs along S.R. 73.

{¶ 2} Relator, Preschool Development, Ltd. ("PDL"), is a limited liability company that operates a daycare facility located on property it owns on S.R. 73 in Springboro. No public street other than S.R. 73 abuts or otherwise adjoins PDL's property.

{¶ 3} In 1998, when a daycare center was anticipated on the site, a curb cut providing for vehicular access between the property and S.R. 73 was constructed. All necessary permits to develop the property, including the permit for the construction of the curb cut, had been obtained. In 1999, the chief executive officer of PDL transferred the property to PDL and sought to convert the property from single-family use to commercial use. Raj K. Sharma, the City Engineer for Springboro, advised the city that although left turns in and out of PDL's existing curb cut had been acceptable for the low traffic volumes associated with a single-family residence, these left turns would be hazardous for business-generated traffic volumes.

{¶ 4} Subsequently, the city advised PDL that the safest alternative would be to grant PDL and its customers access to S.R. 73 through the property of Discount Drug Mart Plaza, an adjacent shopping center then being constructed.

{¶ 5} In June and July 2002, the Ohio Department of Transportation ("ODOT") began repaving S.R. 73 near PDL's property. During this process, on the city's instruction, ODOT removed PDL's curb cut to S.R. 73 after determining that

closing the curb cut would best maximize safety and traffic flow. ODOT replaced the curb cut with a four-inch concrete barrier.

{¶ 6} Springboro and the general public received a permanent easement for vehicular and pedestrian traffic between PDL's property and the curb cut for Discount Drug Mart Plaza that allows access to S.R. 73. The distance from the center line of the original PDL curb cut to the center line of the Discount Drug Mart Plaza curb cut is approximately 207 feet. The distance from the eastern boundary of the PDL property to the center of the Discount Drug Mart Plaza curb cut is approximately 94 feet. According to Sharma, traffic to and from the shopping center and the PDL property now maintains a reasonable traffic flow.

{¶ 7} On July 23, 2002, PDL filed a complaint in the Warren County Court of Common Pleas claiming that Springboro's elimination of its curb cut onto S.R. 73 violated a written contract as well as the United States and Ohio Constitutions. PDL sought a writ of mandamus to compel Springboro to bring appropriation proceedings under R.C. Chapter 163 and to grant access to certain documents. PDL also raised claims for trespass, declaratory judgment, and relief under Section 1983, Title 42, U.S.Code. After Springboro notified PDL of removal of the case to a federal district court, PDL dismissed its complaint without prejudice on July 29, 2002.

{¶ 8} Nearly three months later, in October 2002, PDL filed this action for a writ of mandamus to compel Springboro to bring an appropriation action for the elimination of the curb cut. The city answered, and following the issuance of an alternative writ, the parties submitted evidence and briefs.

{¶ 9} This cause is now before the court upon the city's request for oral argument and on the merits.

## Oral Argument

{¶ 10} We deny Springboro's request for oral argument. The city does not specify why oral argument would be beneficial. *Johnson v. Timmerman–Cooper* (2001), 93 Ohio St.3d 614, 615, 757 N.E.2d 1153. Furthermore, this case does not involve any conflict between courts of appeals or complex legal or factual matters that would benefit from oral argument. *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.,* 97 Ohio St.3d 269, 2002-Ohio-6322, 779 N.E.2d 216, ¶ 13. And although this case does raise a constitutional issue, we have resolved comparable takings cases without oral argument. See, e.g., *State ex rel. Elsass v. Shelby Cty. Bd. of Commrs.* (2001), 92 Ohio St.3d 529, 532–533, 751 N.E.2d 1032; *State ex rel. Painesville v. Lake Cty. Bd. of Commrs.* (2001), 93 Ohio St.3d 566, 569, 757 N.E.2d 347.

{¶ 11} PDL asserts that it is entitled to a writ of mandamus to compel Springboro to commence appropriation proceedings.

{¶ 12} The United States and Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation. Fifth and Fourteenth Amendments to the United States Constitution; Section 19, Article I, Ohio Constitution. "Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged." *State ex rel. Shemo v. Mayfield Hts.* (2002), 95 Ohio St.3d 59, 63, 765 N.E.2d 345, reconsideration granted in part on other grounds, 96 Ohio St.3d 379, 2002-Ohio-4905, 775 N.E.2d 493, certiorari denied (2003), —— U.S. ——, 123 S.Ct. 1484, 155 L.Ed.2d 226. As the relator, PDL has the burden of proving its entitlement to the writ. *Elsass,* 92 Ohio St.3d at 533–534, 751 N.E.2d 1032.

{¶ 13} PDL claims that the city's elimination of its curb cut denied its right of access to the abutting public highway, S.R. 73, and constituted a compensable taking. " 'In cases of * * * destruction of a fundamental attribute of ownership like the right of access, the landowner need not establish the deprivation of *all* economically viable uses of the land.' " (Emphasis sic.) *State ex rel. Sekermestrovich v. Akron* (2001), 90 Ohio St.3d 536, 537–538, 740 N.E.2d 252, quoting *State ex rel. BSW Dev. Group v. Dayton* (1998), 83 Ohio St.3d 338, 342, 699 N.E.2d 1271. Instead, the landowner must demonstrate "a substantial or unreasonable interference with a property right." *State ex rel. OTR v. Columbus* (1996), 76 Ohio St.3d 203, 206, 667 N.E.2d 8.

{¶ 14} Consistent with these holdings, "[a] property owner's right of access to his property from a street or highway upon which it abuts cannot be lawfully destroyed or unreasonably affected * * *." *State ex rel. McKay v. Kauer* (1951), 156 Ohio St. 347, 46 O.O. 204, 102 N.E.2d 703, paragraph one of the syllabus.

{¶ 15} Here, however, the city did not destroy or unreasonably interfere with PDL's right of access to and from S.R. 73. It is true that PDL no longer has access to and from S.R. 73 directly from its property. It does, however, have access to and from S.R. 73 via a route that runs parallel to S.R. 73 from its property to the center line of the curb cut of an adjacent shopping center for a total length of 94 feet. The fact that drivers must negotiate one additional turn and travel 207 feet along a secondary access route rather than on S.R. 73 to reach the PDL parking lot does not warrant a finding of a compensable taking. See *State ex rel. Merritt v. Linzell* (1955), 163 Ohio St. 97, 56 O.O. 166, 126 N.E.2d 53, paragraph two of the syllabus ("Mere circuity of travel, necessarily and newly created, to and from real property does not of itself result in legal impairment of the right of ingress and egress to and from such property * * * ").

{¶ 16} We reached a similar conclusion in *State ex rel. Noga v. Masheter* (1975), 42 Ohio St.2d 471, 71 O.O.2d 484, 330 N.E.2d 439. In that case, we denied a writ of mandamus to compel the Director of Highways to commence appropriation proceedings. We ruled that the state's elimination of the landowners' direct access to a highway by constructing a curb barricade along the edge of the highway fronting their property did not constitute a compensable taking. In that case, the state had constructed a service road that gave the landowners access to the highway, which was approximately 500 feet from their property. In the case at bar, the city and the public were granted a perpetual easement across the adjacent shopping center property to a curb cut to S.R. 73, which is only about 207 feet from PDL's original curb cut. In *Noga*, the distance involved was more than twice as long, yet we did not find the elimination of the owner's direct access from its property to result in a compensable taking.

{¶ 17} PDL's reliance on *OTR* is misplaced. In *OTR*, 76 Ohio St.3d 203, 667 N.E.2d 8, syllabus, we held that an "owner of a parcel of real property has a right to access public streets or highways on which the land abuts. Therefore, any governmental action that *substantially* or *unreasonably* interferes with this right constitutes a taking of private property * * *." (Emphasis added.) Although *OTR* referred to the denial of access to the abutting public roadway along the frontage of the property, we do not view this language as controlling here. This reference was made in an appreciably different factual context in which the government's action of building a railroad overpass not only significantly changed the grade of the property frontage, but also involved the building of massive concrete retaining walls precluding the property owner from ever developing any access routes onto the abutting road—an action which the majority found "destroyed or at the very least substantially impaired" the owners' right of access to its properties. Id. at 209, 667 N.E.2d 8. We reject the argument that *OTR* stands for the proposition that a substantial or unreasonable interference with access to abutting roads necessarily occurs when that access no longer is direct from the frontage of the parcel itself.

{¶ 18} Because the elimination of PDL's curb cut onto S.R. 73 did not substantially or unreasonably interfere with its access to the property from S.R. 73, we deny the writ. PDL has not established that the city's elimination of the curb cut represented a compensable taking. By so holding, we need not address the city's alternative argument that PDL's previously dismissed action constituted an adequate remedy at law that precludes its entitlement to the writ here.

Writ denied.

Lundberg Stratton, O'Connor and O'Donnell, JJ., concur.

Resnick, F.E. Sweeney and Pfeifer, JJ., dissent.

PFEIFER, J., dissenting.

{¶ 19} Because the property at issue will not house a preschool forever, and because this damaging decision *will* be around forever, I respectfully dissent.

{¶ 20} The determination of this case comes down to whether the applicable precedent is *State ex rel. OTR v. Columbus* (1996), 76 Ohio St.3d 203, 667 N.E.2d 8, or *State ex rel. Noga v. Masheter* (1975), 42 Ohio St.2d 471, 71 O.O.2d 484, 330 N.E.2d 439. The majority's reliance on *Noga* is misplaced; *OTR,* on the other hand, is directly analogous.

{¶ 21} In *Noga,* the appellees owned property abutting U.S. Route 422, a four-lane highway in Trumbull County. Until 1968, the appellees had direct access to the westbound lanes of Route 422. In 1968, however, the state changed the entire character of the roadway, widening it and transforming it into a limited-access highway. However, the state constructed a service road to which each property owner had its own access, and that road connected to Route 422.

{¶ 22} In this case, S.R. 73's character was not transformed. Other property owners along S.R. 73 retained their direct access to the roadway, unlike in *Noga,* where every property owner was affected. Most important, in *Noga,* each property owner ended up with its own direct access to a public road; here, PDL is left without its own direct access to a public road.

{¶ 23} *State ex rel. Merritt v. Linzell* (1955), 163 Ohio St. 97, 56 O.O. 166, 126 N.E.2d 53, the case cited by the majority for the proposition that "[m]ere circuity of travel, necessarily and newly created, to and from real property does not of itself result in legal impairment of the right of ingress and egress to and from such property * * *," also addresses a situation completely different from the case at bar. In *Merritt,* aggrieved property owners had abutted U.S. Highway 50 in Athens County until the state relocated five miles of that highway to avoid a long, sweeping curve. These property owners found themselves on the old portion of the road, which became a part of the Athens County highway system. Access lanes were built to connect the former U.S. 50 to the new U.S. 50. Again in *Merritt,* as in *Noga,* while the entire character of the roadway was changed, all landowners retained their own direct ingress and egress from a public road.

{¶ 24} *OTR* is the case that is more directly on point. *OTR* held two parcels of real property on East Campus View Boulevard in Columbus. Neither property had established driveways along the properties' frontage on Campus View Boulevard. Both properties were accessible by other driveways not going through OTR's Campus View frontage. The city of Columbus decided to extend Campus View Boulevard, and that project involved changing the grade of the road and constructing an overpass over railroad tracks. Those changes in the road prevented OTR from ever developing access routes along the building's

frontage on Campus View Boulevard. Despite the fact that direct access onto Campus View did not yet even exist, this court held that the city had substantially or unreasonably interfered with OTR's right of access. This court rejected the holding of the appellate court that " '[o]nly where the denial of an undeveloped right of access results in a complete loss of access to the property * * * will the denial be found to constitute a "substantial interference." ' " *OTR*, 76 Ohio St.3d at 206, 667 N.E.2d 8.

{¶ 25} In *OTR*, as here, another way of entering the property remained. But the city "interfered with an existing property right—the right to access Campus View Boulevard from appellants' abutting properties." Id., 76 Ohio St.3d at 209, 667 N.E.2d 8. As the court held in *OTR*, "The law in Ohio is clear. An owner of a parcel of real property has a right to access public streets or highways on which the property abuts." Id. at 211, 667 N.E.2d 8. That law applies just as clearly to PDL as it did to OTR.

{¶ 26} A complete denial of direct access to the abutting street substantially interferes with a property possessor's ownership rights. Here, we are not dealing with mere *potential* access to the abutting thoroughfare, but existing access. Based on *OTR*, PDL has established a compensable taking. "An owner of property abutting on a public highway possesses, as a matter of law, not only the right to the use of the highway in common with other members of the public, but also a private right or easement for the purpose of ingress and egress to and from his property, which latter right may not be taken away or destroyed or substantially impaired without compensation therefor." *Merritt*, 163 Ohio St. 97, 56 O.O. 166, 126 N.E.2d 53, paragraph one of the syllabus. When the abutting property owner's access-easement is extinguished, a compensable taking occurs. *Rothwell v. Linzell* (1955), 163 Ohio St. 517, 56 O.O. 431, 127 N.E.2d 524.

{¶ 27} We should not approach this case by merely asking how unreasonable it is for a daycare business to have its means of street entry moved 207 feet onto an adjoining property. We must consider whether a complete removal of access directly from this property to the street is a substantial impairment of the right of access. One might dispute the value of this taking, but that is a matter properly determined in an appropriation proceeding.

{¶ 28} Part of the wisdom of *OTR* is its recognition that unused access is still valuable. The PDL property will most likely not house a daycare center in perpetuity. When the owners sell the property, would its value be diminished without its own curb cut? When faced with properties in a similar location, which would a buyer choose, the property with or without its own access to the roadway? The age-old adage is that the three most important considerations in determining the value of a piece of property are location, location, and location. From the standpoint of real estate values (excepting residential), direct access to

a busy street or highway is among the most important aspects of location. Renne, How Industry Changes Are Affecting Restaurant Property Values (Sept./Oct. 1998), Assessment J. 31; Smalley, Measuring the Convenience of Gas Stations (Oct. 1999), Appraisal J. 399.

{¶ 29} Our holding today will affect property owners statewide, not merely the owners and operators of this daycare center. The majority's holding that a local government may take away a property owner's direct access to the roadway without compensation undermines the value of every piece of commercial property. It affects owners, lenders, and developers by creating a cloud on value. No one can be certain what the owner actually owns.

{¶ 30} The question may arise, as a practical matter, as to how often takings like the one in this case might actually happen. The answer is: Often, if you don't have to pay. The great restraint on this type of arbitrary taking is the knowledge of governments that they are constitutionally required to pay for what they take. Our state's commitment to that idea is so fundamental as to be explicitly set forth in the Ohio Constitution. Section 19, Article I of the Ohio Constitution states:

{¶ 31} "Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure, or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money, and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money, and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner."

{¶ 32} The Fifth Amendment to the United States Constitution is equally applicable here. The Fifth Amendment declares, "No person * * * shall be * * * deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

{¶ 33} Here, there was no due process and no compensation. Over a July weekend in 2002, the entrance to PDL simply disappeared, replaced by a four-inch barrier. Springboro gave PDL no prior notice or warning. While ODOT was in the neighborhood resurfacing S.R. 73, the city simply instructed the ODOT contractor to curb over PDL's entry.

{¶ 34} The majority's decision invites cities to curb over any driveway in the interest of safety, as long as there remains a plausible, indirect way to reach the abutting roadway. It establishes the possibility of competitive advantages for certain landowners. What Wendy's owner wouldn't say, "For the good of the town, and the safety of its citizens, please close off the driveway to McDonald's. If you do that, out of our sense of civic responsibility, we will grant McDonald's

an easement, so that anyone hungry for a hamburger can enter through our driveway. And feel free to 'biggie size' that curb!"

RESNICK and F.E. SWEENEY, JJ., concur in the foregoing dissenting opinion.

---

Finney, Stagnaro, Saba & Klusmeier Co., L.P.A., Mark H. Klusmeier and Paul T. Saba, for relator.

Rendigs, Fry, Kiely & Dennis, L.L.P., Wilson G. Weisenfelder Jr. and James J. Englert; and Roger C. Eckert, Springboro Law Director, for respondent.