OPINION
{¶ 1} Appellant, Gordon Proctor, Director, Ohio Department of Transportation ("ODOT"), appeals the judgment of the Trumbull County Court of Common Pleas awarding appellee, N E Realty, LLC, compensation and damages for the appropriation of realty for expansion of the Niles-Cortland Road, State Route 46, in Howland Township, Ohio. We reverse the judgment of the trial court and remand the matter for further proceedings.
 {¶ 2} N E is the owner of a five unit strip mall at the corner of the State Route 46 and Raglan Drive in Howland Township. Prior to the appropriation, the property measured 200' by 200', constituting .918 acre, or 39,988 square feet. N E had curbing within its property, and an electrified sign. There were about twenty-six parking spaces in its lot. Testimony introduced at trial indicated that an improved pattern for the parking could increase the number of parking spaces to thirty-five or thirty-eight. N E also owned the land extending out to the centerline of State Route 46, subject to the highway easement.
 {¶ 3} In order to accomplish its road expansion, ODOT filed a petition for appropriation July 8, 2003. ODOT appropriated N 
E's land already subject to the highway easement, plus a fifteen-foot deep strip running along the front of N E's property. It appropriated a temporary 5' construction easement through N E's property for eighteen months. It removed some of N E's curbing, replacing it with state-owned curbing. It slightly increased the grade of State Route 46.
 {¶ 4} ODOT paid N E some $30,000 for the land taken, which closely approximates the value — $28,964 — placed on it by N 
E's expert witness. At issue on appeal are the jury's awards for damages to the residue, and for compensation for the temporary easement.
 {¶ 5} Jury trial was held February 23 through 25, 2005. N E cross-examined James Kinnick, real estate engineer for ODOT District 4 (which includes Trumbull County). Mr. Kinnick testified that the change to State Route 46's grade was designed to cause water to flow off the road. He testified that the new roadway was designed to contain waters from a ten-year rain without allowing overflow onto adjacent properties. He admitted that the land taken from N E could contain up to fifteen parking spaces.
 {¶ 6} N E introduced the expert testimony of Mr. Bruce Sekanic, an architect. He testified that N E's parking lot prior to the appropriation was not configured for its highest and best use. He testified that, with due consideration for traffic flow, N E had lost eleven parking spaces due to the taking.
 {¶ 7} Mr. Barry Dunaway, an experienced local realtor, was N E's expert witness for valuation of the taking. Mr. Dunaway had submitted a report. Mr. Dunaway valued the entire property at $498,531 prior to the taking. He used the comparable sales method to value the acreage, and the cost less depreciation method to value the building, parking lot, and curbing. He had a sign company value the electric sign. He appraised the land and improvements taken at $28,694, thus assigning a pre-take value of $469,837 to the residue.
 {¶ 8} Mr. Dunaway testified that the post-take value of the residue was $422,853. He identified three principle causes for the damages of $46,984. He noted that ODOT had taken 16 per cent of the depth of the parking lot, thus reducing parking potential, and increasing congestion. He considered the change in grade to the roadway, causing water to flow toward, and possibly onto, N 
E's property. Finally, he considered the addition of state-owned curbing, which N E could only cut for new or different entrances to its property with state approval.
 {¶ 9} Mr. Dunaway testified that the value of the temporary easement through N E's property was $12,685. He arrived at this figure by determining that a lessor of the subject easement would pay a rental of 2 per cent of the entire property for the land subject of the easement, which comes to $8,457 per year. This translates to $12,685 for eighteen months.
 {¶ 10} Prior to trial, ODOT moved in limine to prevent the introduction of Mr. Dunaway's report and/or testimony. ODOT objected to all of Mr. Dunaway's testimony, and moved to strike it. These objections were properly renewed during and at the end of trial.
 {¶ 11} ODOT relied on the expert testimony of Mr. David Vogel, an experienced Pennsylvania realtor and realty broker, to show that N E suffered no damages to the residue of its property. Mr. Vogel applied each of the three methods of appraisal recognized in appropriation cases to the property, both before and after the taking, in reaching his conclusion.[1]
He further opined that, under the comparable sales method, the value of the temporary easement was $950, calculated on the basis of a ground rental for the property, combined with a 10 per cent rate of return. Mr. Vogel determined that the value of the lands and improvements actually taken was $30,000.
 {¶ 12} The trial court granted ODOT's motion to strike Mr. Dunaway's testimony, insofar as it purported to show damages arising from the installation of state-owned curbing. The court refused to strike all of Mr. Dunaway's testimony.
 {¶ 13} The jury returned a verdict awarding N E $30,000 in compensation for the permanent take, $2,500 in compensation for the temporary easement, and $17,500 for damages to the residue. The trial court entered this as a judgment March 28, 2005. ODOT timely appealed, making two assignments of error:
 {¶ 14} "[1.] The trial court erred to the prejudice of appellant in denying several motions to strike the testimony of the landowner's expert witness which was not founded on reliable scientific, technical, or other specialized information * * *.
 {¶ 15} "[2.] The trial court erred by refusing to strike all of the property owner's testimony concerning damage to the residue where the expert's opinion was based in part on evidence ruled inadmissible and the witness could not segregate any portion of his single damage amount attributable to that excluded evidence * * *."
 {¶ 16} Decisions regarding the admission of evidence are within the sound discretion of the trial court, and may not be reversed absent an abuse of discretion. O'Brien v. Angley
(1980), 63 Ohio St.2d 159, 163. "Abuse of discretion" does not arise from mere error in law or judgment; rather, it connotes an arbitrary, capricious, or unconscionable attitude. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 17} When a government appropriates property, the owner may be entitled to a two-fold remedy. Norwood v. Forest ConvertingCo. (1984), 16 Ohio App.3d 411, 415. The owner is entitled to "compensation" for the property actually taken. Id. Compensation is the fair market value of the property. If the taking is only partial, the owner may be entitled to "damages." Id. Damages are the injury resulting from the taking to the "residue" of the property still held by the owner, less any special benefits accruing to the residue from improvements. Id.
 {¶ 18} "In determining fair market value [for appropriation purposes], there are three recognized methods of appraisal: (1) cost of reproducing property less depreciation, (2) market data approach utilizing recent sales of comparable property, and (3) income or economic approach based on capitalization of net income." Pokorny v. Local 310 (1973), 35 Ohio App.2d 178, 180, reversed on other grounds (1974), 38 Ohio St.2d 177, 182; accordWray v. Mussig (Sept. 20, 1996), 11th Dist. No. 95-L-172, 1996 Ohio App. LEXIS 4113, at 23-24.
 {¶ 19} Under its first assignment of error, ODOT contends that Mr. Dunaway's testimony regarding valuation should have been stricken, since his appraisals of the post-take value of the residue, and of the temporary easement, were improperly calculated. ODOT's arguments center on the interpretation of our prior decision in the Mussig case. In Mussig, the property owner's valuation expert appraised the pre-take value of the subject land under one of the approved methods. Id. at 3-4, 24. In determining damages to the residue, however, he simply noted certain consequences of the taking — including loss of potential parking — and determined that the residue had lost 25 per cent of its pre-take value. Id. at 5.
 {¶ 20} On appeal, ODOT argued that the property owner's expert's testimony should have been stricken, since his post-take valuation of the residue was improper and inadmissible. Cf.Mussig at 7. This court agreed, determining that, subject to the Rules of Evidence, an expert valuation of the pre- and post-take value of appropriated property had "to be founded on one of the three recognized methods of appraisal to be admissible." Id. at 24.
 {¶ 21} In this case, ODOT seems to argue that Mussig
requires separate appraisals, under one of the approved methods, before and after the taking. This was the method adopted by ODOT's expert, Mr. Vogel. While this may be "best practice," we do not think the holding in Mussig goes so far. Rather,Mussig requires that the valuation expert's testimony befounded on one of the three recognized methods of appraisal to be admissible. Thus, once a pre-take value is properly established under a recognized method of appraisal, an appropriate figure for the value of the residue might be derived therefrom by subtracting the compensation for the take, and an intelligible and explicable damage figure for the residue.
 {¶ 22} In this case, Mr. Dunaway gave the factors he considered in determining there was damage to the residue, and explained why these were significant in his expert opinion. Since he had calculated the pre-take value of the subject property under one of the approved appraising methods, this was sufficient to establish the admissibility of his testimony regarding the post-take value of the residue, and damages. Any problem went to the weight of his testimony.
 {¶ 23} However, Mr. Dunaway simply did not use one of the approved appraisal methods in valuing the temporary easement. Pursuant to all authority which we can find, this made his testimony on that easement's value inadmissible.
 {¶ 24} Consequently, ODOT's first assignment of error fails regarding Mr. Dunaway's testimony concerning the post-take value of the residue, and damages thereto. It has merit concerning the valuation of the temporary easement.
 {¶ 25} By its second assignment of error, ODOT attacks the admissibility of Mr. Dunaway's testimony, since the evidence regarding one of his damage factors for the residue — loss of curbing — was held inadmissible by the trial court. That court instructed the jury to ignore the issue when determining damages. ODOT notes that Mr. Dunaway was unable to assign discrete values to each damage factor, but insisted that they were inextricably entwined. Due to Mr. Dunaway's inability or refusal to break down his figure for damages, ODOT believes that it was unfairly prejudiced by Mr. Dunaway's testimony, pursuant to Evid.R. 403(A).
 {¶ 26} We agree. Having determined that curbing was not a factor to be considered in establishing damages to the residue, the trial court abused its discretion in allowing the jury to consider Mr. Dunaway's testimony concerning damages to the residue. There was no way for the jury to properly sever the curbing issue from any other damage factors considered by Mr. Dunaway, since he did not provide the basis to do so.
 {¶ 27} We further note that it was improper for the jury to consider the grade change issue in determining damages to the residue of N E's property. A grade change must interfere substantially with an adjacent property owner's use of his property to be compensable. State, ex rel. Schiederer v.Preston (1960), 170 Ohio St. 542, at paragraph two of the syllabus. The grade change herein was designed to prevent flooding of adjacent property apart from "ten year" rains. Flooding attributable to public improvements caused by "ten year" rains does not constitute a compensable taking at Ohio law.Accurate Die Casting Co. v. Cleveland (1981),2 Ohio App.3d 386, at paragraph three of the syllabus.
 {¶ 28} The second assignment of error has merit.
 {¶ 29} The judgment of the Trumbull County Court of Common Pleas is reversed regarding Mr. Dunaway's valuation of the temporary easement, as well as his valuation of damages to the residue, and this matter is remanded for proceedings consistent with this opinion.
Ford, P.J., Rice, J., concur.
[1] These include the cost of reproducing the property less depreciation method, the comparable sales method, and capitalization of net income method. Wray v. Mussig (Sept. 20, 1996), 11th Dist. No. 95-L1-72, 1996 Ohio App. LEXIS 4113, at 23-24.